1  NICHOLAS A. TRUTANICH
   United States Attorney
2  District of Nevada
   Nevada State Bar No. 13644
3  DANIEL D. HOLLINGSWORTH
   Assistant United States Attorney
4  Nevada State Bar No. 1925
   501 Las Vegas Boulevard South, Suite 1100
5  Las Vegas, Nevada 89101
   (702) 388-6336
6  Daniel.Hollingsworth@usdoj.gov
   Attorneys for the United States
7

8

9
                    UNITED STATES DISTRICT COURT
10                      DISTRICT OF NEVADA

11 UNITED STATES OF AMERICA,              2:19-CR-032-RFB-VCF

12         Plaintiff,                     **United States of America's Unopposed
                                          Amended Motion for an Interlocutory
13     v.                                 Order of Sale of the 2015 Ford F250 Truck
                                          and 2004 Sundowner LQ Horse Trailer,
14 PATTI KERN,                            and Order**

15         Defendant.

16        The United States moves this Court to issue an Order for an Interlocutory Sale of the

17 2015 Ford F250 Truck held in the name of Patti Kern, VIN 1FT7W2BT5FED16800 (2015

18 Ford F250) and the 2004 Sundowner LQ Horse Trailer held in the name of Patti Kern, VIN

19 12SLE322141KA4098 (2004 Trailer) (constituting property) listed in the Plea Agreement

20 (ECF No. 10) and Preliminary Order of Forfeiture (ECF No. 11), authorizing the United

21 States Marshals Service (USMS) to sell the property through one of its approved methods.

22        The grounds for granting the Order for an Interlocutory Sale of the 2015 Ford F250

23 and the 2004 Trailer are as follows. First, the 2015 Ford F250 and the 2004 Trailer continue

24 to deteriorate pending the sentencing of Patti Kern (Kern). Second, the value of the 2015

25 Ford F250 and the 2004 Trailer continue to depreciate. Third, the storage costs and other

26 maintenance costs of the 2015 Ford F250 and the 2004 Trailer will continue to accrue

27 against its value. Fourth, the sooner the 2015 Ford F250 and the 2004 Trailer are sold, the

28 *///*

more net sale proceeds will exist. Fifth, this Court is authorized to approve interlocutory sales.

This Motion is made and is based on the papers and pleadings on file herein, and the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF THE CASE

### A. Procedural History

On March 14, 2019, Kern plead guilty (ECF Nos. 6, 7, 8, 9, 14) by plea agreement (PA, ECF No. 10) to a One Count Criminal Information (ECF No. 8), charging her with conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1341 and 1349 and alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p) because the property was fraudulently obtained illegal proceeds. This Court entered a Preliminary Order of Forfeiture (ECF No. 11) forfeiting personal property and substituting and forfeiting the 2015 Ford F250 and the 2004 Trailer and an additional $400,000. The sentencing has been continued and is scheduled currently for June 4, 2020.

### B. Statement of Facts

From no later than May 2011 until February 2018, within the District of Nevada and elsewhere, Kern, together with others, engaged in a direct-mail scheme that sent fraudulent prize promotion mailings to thousands of consumers across the United States. The mailings induced victims to pay a fee in exchange for a falsely promised large cash prize. The object and purpose of the scheme was to obtain money from the victims by means of false and fraudulent statements and material concealments of fact in the mailings. None of the victims who sent a fee to Kern and her co-conspirators in response to a fraudulent prize promotion mailing from the direct-mail scheme ever received a large cash prize (PA, ECF No. 10, p. 4-5).

In devising and carrying out the direct-mail scheme, Kern knowingly conspired with others to commit the crime of mail fraud as that crime is defined in 18 U.S.C. § 1341. The purpose of the conspiracy was to obtain money from victims, many of whom were elderly

and vulnerable, by means of materially false representations. In planning and executing the scheme, Kern acted with intent to defraud her victims (PA, ECF No. 10, p. 5).

To execute the fraudulent scheme, Kern and her co-conspirators caused fraudulent prize promotions to be delivered to victims by U.S. mail. The mailings misled victims to believe that they would receive large sums of money, ranging from hundreds of thousands to several million dollars, if they paid a relatively small fee. This statement was false. Victims did not receive large sums of money (PA, ECF No. 10, p. 5, Presentence Investigation Report, p. 6, ¶ 12 and p. 9, ¶ 29). The mailings were made to appear as if they came from sophisticated companies and often were signed by a person with an official title, such as "Director of Disbursements," "President," or "Comptroller." In fact, none of these people actually existed. The mailings directed victims to pay a delivery fee, generally $20 or $25 (PA, ECF No. 10, p. 5).

The defendant admits that her conduct caused in excess of $8 million in losses to the victims of her direct-mail scheme (PA, ECF No. 10, p. 5).

**C. USPIS took possession of the 2015 Ford F250 and the 2004 Trailer.**

This Court entered the Preliminary Order of Forfeiture (ECF No. 11, p. 3-4), ordering the United States to seize and to take possession of the 2015 Ford F250 and the 2004 Trailer. USPIS did so on June 3, 2019.

**D. The 2015 Ford F250 and the 2004 Trailer continue to depreciate in value and the storage costs continue to increase pending the sentencing of Kern.**

The United States Postal Investigation Service (USPIS) seized the properties on June 3, 2019, and they were in USPIS custody until November 1, 2019.  The properties have been in the custody of USMS custody since November 1, 2019. At the time of seizure, the 2015 Ford F250 value was $40,050.00. As of November 11, 2019, the value of the 2015 Ford F250 is $33,650.00. As of November 30, 2019, the storage costs of the 2015 Ford F250 total $423.25, and continue to accrue $9.00 each day. At the time of seizure, the 2004 Trailer value was $5,120.00. As of November 11, 2019, the value of the 2004 Trailer is

///

$4,200.00. As of November 30, 2019, the storage costs of the 2004 Trailer total $710.00, and continue to accrue $8.00 each day.

While each property is in storage, the expenses continue to accrue against each property's value pending Kern's sentencing and appeal, if any, and each property continues to depreciate in value.

## II. ARGUMENT

This Court has authority to issue an Interlocutory Order of Sale. "At any time before entry of a final forfeiture order, the court, in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure, may order the interlocutory sale of property alleged to be forfeitable." Fed. R. Crim. P. 32.2(b)(7).

> On motion by a party or a person having custody of the property, the court may order all or part of the property sold if: (A) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or is disproportionate to its fair market value; (C) the property is subject to a mortgage or to taxes on which the owner is in default; or (D) the court finds other good cause.

Supplemental Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure (paragraphs omitted). Only one of the grounds for interlocutory sale is required since Supplemental Rule G(7)(b) is disjunctive. *See Shelter Cove Marina, Ltd. v. M/Y ISABELLA*, No. 3:17-cv-01578-GPC-BLM, 2017 WL 5906673, 2 (S.D. Cal. Nov. 30, 2017) (explaining that another Supplemental Rule for interlocutory sale with similar language is disjunctive); *Cal. Yacht Marina-Chula Vista, LLC v. S/V OPILY*, No. 14-cv-1215-BAS-BGS, 2015 WL 1197540, 2 (S.D. Cal. Mar. 16, 2015) (same).

Three of the four reasons for the interlocutory sale apply in this case regarding the property: the property will deteriorate while the criminal prosecution and forfeiture processes are completed; the storage costs continue to increase; and other good cause, the value of the vehicle depreciates over time, and the sooner the vehicle is sold, more net sale proceeds will exist. Supplemental Rule G(7)(b); Fed. R. Crim. P. 32.2(b)(7); see *United States v. One Parcel of Real Prop. Described as Lot 41, Berryhill Farm Estates*, 128 F.3d 1386, 1389–90

(10th Cir.1997) (explaining the district court orders an interlocutory sale when the property is deteriorating and decaying).

"A sale must be made by a United States agency that has authority to sell the property, by the agency's contractor, or by any person the court designates." Supplemental Rule G(7)(b)(ii). In this case, the USMS will sell the property as "governed by 28 U.S.C. §§ 2001, 2002, and 2004, unless all parties, with the court's approval, agree to the sale, aspects of the sale, or different procedures." Supplemental Rule G(7)(b)(iii).

Without the Interlocutory order of sale, the property cannot be sold until the court enters the Final Order of Forfeiture. Fed. R. Crim. P. 32.2(b)(4) and 21 U.S.C. § 853(h). If the government waits for the Final Order of Forfeiture, the value of the vehicle will depreciate even further and the storage costs and maintenance costs will continue to accrue.

In *United States v. Guzman*, No. 3:08-CR-23-2, 2013 WL 12228400 (M.D. Tenn. Oct. 7, 2013), the district court found and held:

> The Government has presented evidence suggesting that the value of the [property] continues to decrease with time and, as of last month, was approximately $16,500.00 less than the amount the Government had paid for storage and maintenance up to that point. Thus, the Court finds that the expense of keeping the [property] is both excessive and disproportionate to its fair market value. Given the apparent continued depreciation in value and rising cost of maintaining the [property], the Court finds an interlocutory sale is the best way to preserve its remaining value.

Id. at 2 (brackets added); *United States v. Haley*, No. 11–CR–0540–WDQ, 2011 WL 6202787, 1 (D. Md. Dec. 8, 2011) (explaining "that the Government's desire to avoid storage costs (particularly with respect to the twenty-two automobiles and the tractor trailers) and the risk of depreciation in value (particularly of the computers and other electronic items) constitute "good cause" for the interlocutory sale of the personal property …[,]" and the real property to avoid liability for accidents and to "avoid falling in arrears on the payment of applicable property taxes.").

In this case, the value of the 2015 Ford F250 and 2004 Trailer will continue to depreciate and the maintenance and storage costs will continue to rise and dilute the equity.

///

"The sale proceeds are substitute res subject to forfeiture in place of the property that was sold[, and] the United States must maintain them in an interest-bearing account." Supplemental Rule G(7)(b)(iv); *United States v. King*, No. 10 CR. 122 (JGK), 2010 WL 4739791, 4 (S.D.N.Y. Nov. 12, 2010).

Kern agreed on January 3, 2020, through her counsel, William Terry, to the interlocutory sale of the property. The United States requests the Court allow Kern and the government to sell the property to a third party through the USMS.

**III. CONCLUSION**

Based on the foregoing reasons, the Court should order the interlocutory sale of the 2015 Ford F250 Truck held in the name of Patti Kern, VIN 1FT7W2BT5FED16800 and the 2004 Sundowner LQ Horse Trailer held in the mane of Patti Kern, VIN 12SLE322141KA4098.

Dated: January 3, 2020.

Respectfully submitted,

NICHOLAS A. TRUTANICH
United States Attorney


*/s/ Daniel D. Hollingsworth*
DANIEL D. HOLLINGSWORTH
Assistant United States Attorney



IT IS SO ORDERED:


HONORABLE RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE

DATED: February 10, 2020

**CERTIFICATE OF SERVICE**

A copy of the foregoing was served upon counsel of record via Electronic Filing on January 3, 2020.

/s/ *Heidi L. Skillin*
HEIDI L. SKILLIN
FSA Contractor Paralegal